UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOGRAI TUZOLANA,

Petitioner,

v.                                                          No. 1:26-cv-10259-LTS

PATRICIA HYDE, *et al.*,

Respondents.

**RESPONDENTS' OPPOSITION TO MOTION FOR FEES
UNDER THE EQUAL ACCESS TO JUSTICE ACT (Doc. No. 11)**

The Court should not award fees and costs to Petitioner Lograi Tuzolana under the Equal Access to Justice Act ("EAJA"). For one, habeas petitions do not fall within EAJA's waiver of sovereign immunity, which applies only to "civil action[s]." 28 U.S.C. § 2412(d)(1)(A); *see, e.g., Obando-Segura v. Garland*, 999 F.3d 190, 191 (4th Cir. 2021). Moreover, Respondents were "substantially justified" in taking the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because "a reasonable person could think [the government's position] correct[.]" *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023); *see Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026) (holding that "§ 1225(b)(2)(A) mandates the detention of unadmitted aliens already present inside the United States"); *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026) (holding that an "applicant for admission" arrested within the United States, who "has not showed himself to be 'clearly and beyond a doubt entitled to be admitted[,]'" is subject to mandatory detention under § 1225(b)(2)(A)). Petitioner even concedes that her Petition "implicat[ed] complex and unsettled questions of statutory interpretation, constitutional law, and federal jurisdiction, including the scope of detention authority under 8 U.S.C. § 1225(b)." Mot.

for Attorneys' Fees & Expenses Under the Equal Access to Justice Act (Feb. 20, 2026), Doc. No. 11, at 8 ("Mot.").

Accordingly, the Court should deny Petitioner's motion for fees and costs under EAJA or, if the Court is inclined to grant the motion, the Court should reduce the requested award.

## I.    BACKGROUND

### A.    The Petition

On January 22, 2026, Petitioner filed a habeas petition.  Pet. for Writ of Habeas Corpus (Jan. 22, 2026), Doc. No. 1.  Petitioner alleged that she "is a 37-year-old Angolan asylum seeker who has resided in the U.S. since September 1, 2022."  *Id.* ¶ 1.  She alleged that she "has a timely-filed asylum application pending before the Chelmsford Immigration Court" and "no criminal history."  *Id.* ¶ 5.

Petitioner further alleged that U.S. Immigration and Customs Enforcement ("ICE") detained her "on January 21, 2026 when she reported for an ICE check-in."  *Id.* ¶ 3.  According to the Petition, "ICE informed Petitioner that she was detained . . . because allegedly in 2023, she did not submit a photo of herself pursuant to requirements of her alternatives to detention program participation."  *Id.*

The Petition asserted one claim for relief, alleging that Petitioner's detention violated her substantive and procedural due process rights.  *Id.* ¶ 11.  Petitioner sought an order requiring "Respondents to release Petitioner on her own recognizance or under parole, a low bond, or reasonable conditions of supervision."  *Id.* at Prayer for Relief.

### B.    Response to the Petition

In response to the Petition, Respondents conceded "that the legal issues presented in the Petition are similar to those recently addressed by this Court in *Garcia v. Hyde* and *Encarnacion*

*v. Moniz.*"  Response to Habeas Pet. (Jan. 23, 2026), Doc. No. 7 at 1 (citing Order on First Am. Pet. for Writ of Habeas Corpus, *Garcia v. Hyde*, No. 25-cv-11513-LTS, Doc. No. 21 (D. Mass. July 14, 2025); Order on Pet. for Writ of Habeas Corpus, *Encarnacion v. Moniz*, No. 25-cv-12237-LTS, Doc. No. 16 (D. Mass. Sept. 5, 2025).  Respondents conceded that, if "the Court follow[ed] its reasoning in *Garcia* and *Encarnacion*, it would reach the same result" in this case. *Id.* at 1.  Thus, Respondents submitted "that the Court [could] resolve this Petition without further briefing or oral argument."  *Id.*

## C.    The Court's Order

On January 23, 2026, the Court allowed the Petition, ordering Respondents "to release Petitioner immediately"—meaning "before the end of [that] business day"—"without prejudice to scheduling a bond hearing pursuant to 8 U.S.C. § 1226, to be held no later than January 31, 2026, before an immigration judge."  Electronic Order (Jan. 23, 2026), Doc. No. 8.  "ICE released Petitioner . . . before the end of the business day on January 23, 2026, and did not seek to re-detain Petitioner via a bond hearing by the deadline of January 31, 2026."  Status Report (Feb. 2, 2026), Doc. No. 9 at 1.  The Court entered judgment on February 2, 2026.  Judgment (Feb. 2, 2026), Doc. No. 10.

## D.    Petitioner's Motion Under EAJA

On February 20, 2026, Petitioner filed the instant motion for attorney's fees and costs under EAJA.  Petitioner alleges that she is entitled to EAJA fees because she is a "prevailing party" and because Respondent's pre-litigation and litigation positions were not "substantially justified."  Mot., Doc. No. 11 at 3-6.  Petitioner concedes that EAJA generally limits attorneys' fees to $125 per hour, but requests an "enhanced hourly rate" of $300 for Petitioner's counsel and $150 for Petitioner's counsel's law clerk.  *Id.* at 6-9.  In all, "Petitioner requests that the

3

Court award attorneys' fees in the amount of $2,025," and $5 in costs.  *Id*. at 9; Doc. No. 11-5 at 1.

## II.    LEGAL STANDARD

"As a general principle, each party before the court is usually responsible for its own attorney's fees."  *Michel*, 68 F.4th at 78.  "The EAJA is an exception to this traditional 'American rule.'"  *Id*.  EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).[1]  "The statute's purpose is 'to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'"  *Michel*, 68 F.4th at 78 (quoting *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009)).  "Not only is the EAJA a fee shifting statute, but it is also a waiver of the government's sovereign immunity 'and so must be construed strictly in favor of the government.'"  *Id*. (quoting *Aronov*, 562 F.3d at 88).

## III.   ARGUMENT

### A.    EAJA Does Not Waive Sovereign Immunity in Habeas Cases Challenging Immigration Detention

This Court's jurisdiction to grant a fee award exists only if Congress has waived sovereign immunity for EAJA awards stemming from habeas actions.  The "United States, as

---

[1] Respondents do not dispute that Petitioner is a "prevailing party" under § 2412(d)(1)(A).

sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 48 (2024).  And only Congress can waive the United States' sovereign immunity. *Id*.

The Supreme Court has "said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).  Thus, "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Kirtz*, 601 U.S. at 49 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000)).  Whether Congress has waived sovereign immunity "trains on statutory text rather than legislative history." *Id.*; *see also Cooper*, 566 U.S. at 290 ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute.").

"Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Cooper*, 566 U.S. at 290 (citations omitted).  "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id*. at 290–91.

Here, EAJA waives sovereign immunity only for a limited set of claims, in that it applies only to "any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A).  And the term "civil action" is ambiguous as to whether it encompasses habeas petitions.  The Supreme Court has recognized that, even though habeas petitions are often categorized as civil for general purposes, "the label is gross and inexact." *Harris v. Nelson*, 394 U.S. 286, 293–94 (1969).  Habeas proceedings are instead "unique." *Id.* at 294.  Indeed, the problems presented in

habeas proceedings "are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure[.]" *Id*. at 300 n.7.

Accordingly, the Supreme Court has refused to construe the statutory phrase "civil action" as invariably encompassing habeas proceedings. *See Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) ("Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions."); *Stafford v. Briggs*, 444 U.S. 527, 542–43 (1980) (recognizing that *Schlanger* rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings); *Obando-Segura*, 999 F.3d at 196 (noting that the Supreme Court in *Schlanger* "found that a habeas proceeding seeking release from civil detention was not a 'civil action'").

Congress enacted EAJA 21 years after *Harris* and nine years after *Schlanger*. In passing EAJA, Congress adopted statutory language that used the same phrase—"civil action"—the Court had already held did *not* encompass habeas petitions. Given that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), Congress presumptively intended to adopt *Schlanger*'s construction of that term as excluding habeas petitions.[2]

Although the First Circuit has not addressed whether Congress waived sovereign immunity for EAJA awards stemming from habeas actions,[3] other circuit courts have held that

---

[2] Admittedly, the Supreme Court's jurisprudence also has referred to habeas proceedings as civil. *See, e.g.*, *Banister v. Davis*, 590 U.S. 504, 507 (2020); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 (1978).

[3] To be sure, the First Circuit has considered (and denied) a claim for EAJA fees resulting from a habeas proceeding, but without addressing whether Congress waived sovereign immunity for such a claim in the first place. *See generally Saysana* v. *Gillen*, 614 F.3d 1 (1st Cir. 2010).

EAJA does not apply to habeas actions.  For example, the Fourth Circuit has held that EAJA does not apply to "habeas proceedings seeking release from civil detention."  *Obando-Seguro*, 999 F.3d at 191.  There, the court cited the Supreme Court's observation that "the civil label, as applied to applications seeking the writ of habeas corpus, is 'gross and inexact,' as habeas corpus proceedings are 'unique' and occupy a special place of their own in our system."  *Id*. at 192–93 (quoting *Harris*, 394 U.S. at 293–94).  Ultimately, the Fourth Circuit concluded that "the nature of habeas corpus proceedings makes it ambiguous as to whether habeas proceedings fall within" EAJA's reference to "any civil action."  *Id*. at 193.  And since courts "construe ambiguous waivers of sovereign immunity narrowly," the Fourth Circuit held that "any civil action" excludes habeas proceedings.  *Id*.

The Fifth Circuit reached the same result, expressly agreeing with the Fourth Circuit.  *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).  The Fifth Circuit explained that "[s]ince 'a habeas corpus proceeding is neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique, a category unto itself[,]' it is not purely a civil action, and the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."  *Id.* (quoting *O'Brien v. Moore*, 395 F.3d 499, 505, (4th Cir. 2005)).

To be sure, the Second Circuit has held that EAJA does apply to habeas petitions, but it did so by resorting improperly to "the legislative history of EAJA" to resolve admitted "ambiguity of the term 'civil action[.]'"  *Vacchio v. Ashcroft*, 404 F.3d 663, 669 (2d Cir. 2005).  By resorting to the legislative history to resolve such ambiguity—rather than simply interpreting that ambiguity in favor of immunity—the Second Circuit's approach to the sovereign immunity analysis is incompatible with the Supreme Court's standard expressed in *Cooper* and *Kirtz*.  The

same is true of the Ninth Circuit's decision applying EAJA to habeas petitions. *See In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985).

The Third and Tenth Circuits also held recently that EAJA applies to habeas petitions seeking release from immigration detention. *See Michelin v. Warden Moshannon Valley Correctional Ctr.*, No. 24-2990, 2026 WL 263483, at *1–2 (3d Cir. Feb. 2, 2026) (holding that "a petition for a writ of habeas corpus from immigration detention under § 2241 is an EAJA 'civil action'"); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (concluding that "habeas actions challenging immigration detention are unambiguously 'civil actions'" under EAJA). But those decisions relied largely on a determination that habeas actions historically were considered civil. *Michelin*, 2026 WL 263483 at *4; *Daley*, 158 F.4th at 1159-61. To the contrary, this Court should "rel[y] on persuasive Supreme Court . . . precedent that enumerated why habeas proceedings are hybrid proceedings that are meaningfully different from civil actions." *Obando-Segura*, 999 F.3d at 195.

In short, the unique nature of habeas petitions makes them not unambiguously or unmistakably "civil actions" within the meaning of EAJA. Accordingly, EAJA's text cannot satisfy the Supreme Court's stringent test that "a waiver of sovereign immunity must be '*unequivocally expressed*' in statutory text." *Cooper*, 566 U.S. at 290 (emphasis added). Sovereign immunity thus precludes an award under EAJA here.

**B.      Respondents Were "Substantially Justified" in Asserting that Petitioner is Subject to Mandatory Detention under 8 U.S.C. § 1225(b)(2)(A)**

Regardless, Respondents were substantially justified in detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A), as evidenced most recently by the Fifth Circuit's and Eighth Circuit's rulings in the government's favor on this issue. *See Buenrostro-Mendez*, 2026 WL 323330, at

8

*1; *Avila*, 2026 WL 819258, at *4.  The First Circuit has "held that the government is 'substantially justified' if 'it has a reasonable basis in law and fact' for its position[.]" *Michel*, 68 F.4th at 78 (quoting *Aronov*, 562 F.3d at 94).  In other words, the government is "substantially justified" if "a reasonable person could think [the government's position] correct[.]" *Id*. (quoting *Dantran, Inc. v. U.S. Dep't of Lab.*, 246 F.3d 36, 41 (1st Cir. 2001)).  "To be 'substantially justified,' it is not necessary for the [g]overnment's position to be 'justified to a high degree'; rather, the [g]overnment meets this standard if its position is 'justified in substance or in the main.'" *Id*. (quoting *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010)).  "Further, even if the government failed on the merits, its position could still have been substantially justified." *Id*. However, "the government must justify not only its pre-litigation conduct but also its position throughout litigation." *Dantran*, 246 F.3d at 41.

First, ICE was substantially justified in detaining Petitioner as an "applicant for admission" because "a reasonable person could think [ICE's] position correct." *See Michel*, 68 F.4th at 78.  An "applicant for admission" is, among other things, "[a]n alien present in the United States who has not been admitted[.]"  8 U.S.C. § 1225(a)(1).  Petitioner does not allege that she was "admitted" to the United States.  Thus, she meets the definition of an "applicant for admission."  8 U.S.C. § 1225(a)(1).  And 8 U.S.C. § 1225(b)(2)(A) mandates detention of an "applicant for admission" who is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (B.I.A. 2025) (holding that noncitizens "who are present in the United States without admission are applicants for admission" who "must be detained for the duration of their removal proceedings").

The First Circuit has not resolved whether a person in Petitioner's circumstances is

subject to mandatory detention under § 1225(b)(2)(A).[4]  However, the Fifth Circuit recently

held that an "applicant for admission" arrested within the United States, who "has not showed

himself to be 'clearly and beyond a doubt entitled to be admitted[,]'" is subject to mandatory

detention under § 1225(b)(2)(A).  *Buenrostro-Mendez*, 2026 WL 323330, at *1.  In other words,

the Fifth Circuit reasoned that a non-citizen who is "present in the United States and ha[s] not

been admitted" is an "applicant for admission," and § 1225(b)(2)(A) requires detention of an

"applicant for admission" without eligibility for bond.  *Id*. at *4.

     The Fifth Circuit then rejected petitioners' argument "that § 1225(b)(2)(A) applies only

to aliens who are both 'applicants for admission' and 'seeking admission.'"  *Id*.   The court

reasoned that "there is no material disjunction—by the terms of the statute or the English

language—between the concept of 'applying' for something and 'seeking' something."  *Id*. at

*4 (quoting *Garibay-Robledo v. Noem*, No. 25-cv-177, 2026 WL 81679, at *5 (N.D. Tex. Jan.

9, 2026)).  The Fifth Circuit then concluded that the noncitizens in *Buenrostro-Mendez* were

"deemed, by statute, to be applicants for admission pending the resolution of removal

proceedings[,]" such that they were "presently seeking admission."  *Id*. at *5.

     And just last week, the Eighth Circuit joined the Fifth Circuit in holding that

"§ 1225(b)(2)(A) mandates the detention of unadmitted aliens already present inside the United

States."  *Avila*, 2026 WL 819258, at *4.  The Eighth Circuit "agree[d] with the Fifth Circuit that

the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the

same."  *Id*. at 3.  Thus, the court explained that "while an alien remains an 'applicant for

---

     [4] An appeal is pending before the First Circuit in the *Guerrero Orellana* class action
litigation.

admission,' so long as he is 'present in the United States [and] has not been admitted,' he is also 'presently seeking admission' during this time, regardless of whether he takes 'any further affirmative steps to gain admittance[.]'" *Id*. (citation omitted) (quoting *Buenrostro-Mendez*, 166 F.4th at 502). As such, the Eighth Circuit concluded, § 1225(b)(2)(A) requires detention of applicants for admission present within the United States. *Id*. at *4.

The Fifth and Eighth Circuit's decisions are consistent with several district court decisions across the country. *See, e.g.*, *Garibay-Robledo*, 2026 WL 81679, at *1 (holding that a noncitizen arrested within the United States "'who has not been admitted' . . . is an 'applicant for admission' subject to Section 1225's mandatory-detention provision"); *Chen v. Almodovar,* No. 25-cv-8350, 2025 WL 3484855, at *4 (S.D.N.Y. Dec. 4, 2025) (holding that mandatory detention under § 1225(b)(2) "clearly applies" to a petitioner who entered the United States without admission, where "no 'examining immigration officer' has 'determine[d]' that [p]etitioner is 'clearly and beyond a doubt entitled to be admitted'" (quoting 8 U.S.C. § 1225(b)(2)(A))); *Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (holding that petitioners who were present in the United States without being admitted are "applicants for admission" subject to mandatory detention under § 1225(b)(2)); *Romero v. Bondi*, No. 25-cv-993, 2025 WL 2490659, at *2 (E.D. Va. July 2, 2025) ("Despite Petitioner being released on bond and later redetained, he is still considered an 'applicant for admission' as he has never been admitted into the United States."); *Vargas Lopez v. Trump*, No. 25-cv-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (holding that a noncitizen was an "applicant for admission" even though he had "illegally remained in this country for years"); *Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at *1–3 (W.D. Wash. Aug. 8, 2023) (holding that an individual apprehended near the border and later processed under § 1226

11

"appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted'" (quoting 8 U.S.C. § 1225(a)(1)).  "This jurisprudence makes it clear that the government's position was, and continues to be, substantially justified." *See Michel*, 68 F.4th at 80.

In addition to being substantially justified under statute, ICE's detention of Petitioner likewise was "substantially justified" under the due process clause because the Supreme Court has held that applicants for admission—like Petitioner—are entitled only to the protections set forth by statute—here, § 1225(b)(2)(A)—and that "the Due Process Clause provides nothing more . . . ."[5] *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also, e.g.*, *Romero*, 2025 WL 2490659, at *3.

Similarly, Respondents' position in this litigation was substantially justified.  Petitioner claims that Respondents' "litigation posture" was "aggressive"[6] and that "Respondents argued that this Court lacked jurisdiction and that Petitioner's detention was unreviewable."  Mot., Doc. No. 11 at 5.  But in truth, Respondents simply filed an abbreviated response to the Petition, in which Respondents conceded that the Petition raised issues "similar to those recently addressed by this Court" in prior habeas cases, and recognized that the Court would

---

[5] *But see Bernardo-Rodrigues v. Hyde*, No. 25-cv-00553, 2026 WL 370863, at *3–4 (D. Me. Feb. 10, 2026) (finding the government's position not substantially justified in habeas proceedings concerning a noncitizen arrested and detained within the United States because "the preexisting law in this Circuit required Respondents to afford a noncitizen like Petitioner access to a discretionary detention regime *on due process grounds*" (emphasis in original) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021))).  Unlike here, though, "the parties in *Hernandez-Lara* agreed that § 1226(a) was the operative provision." *Bernardo-Rodrigues*, 2026 WL 370863, at *3 n.3.

[6] Decl. of Attorney Robin Nice in Support of Mot. for Attorneys' Fees Under the Equal Access to Justice Act (Feb. 18, 2026), Doc. No. 11-2, ¶ 5 ("Nice Decl.")

order a bond hearing here if it applied the same reasoning as in its prior cases.  *See* Response to Habeas Pet. (Jan. 23, 2026), Doc. No. 7 at 1.  Thus, Respondents preserved their argument that mandatory detention under § 1225(b)(2)(A) applied while expeditiously advancing the Petition toward a bond hearing.  *See Bernardo-Rodrigues*, 2026 WL 370863, at *2 (recognizing that the Department of Justice "has simply placed its flag in the ground to oppose relief and preserve the issue, with the understanding that it would lose on the merits based on district precedent").

The "mere fact that the government [did] not prevail is not dispositive on the issue of substantial justification." *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001).  And even though each session of this Court to address the issue has held that § 1225(b)(2)(A) does not apply to circumstances similar to this case, Petitioner concedes that the Petition "implicat[ed] complex and unsettled questions of statutory interpretation, constitutional law, and federal jurisdiction, including the scope of detention authority under 8 U.S.C. § 1225(b)."  Mot., Doc. No. 11 at 8; *id.* at 8 ("Petitioner's case was entirely fixed on nuances of habeas corpus law in the immigration context, and on complex statutory interpretations of 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a)."); *see Bernardo-Rodrigues*, 2026 WL 370863, at *3 ("It is not determinative that [the court] previously concluded that the merits favored Petitioner.").   In any event, the question for purposes of EAJA is whether "a reasonable person could think [the government's position] correct[.]" *Michel*, 68 F.4th at 78.  And here, the Fifth and Eighth Circuits—and several district courts across the country—agree with Respondents' position in this case, which indicates that "a reasonable person could think" that Respondents' litigation position was "correct."

**C.      If the Court is Inclined to Award Fees, the Court Should Reduce the Requested Award**

Petitioner seeks to recover $2,025 in attorney's fees, broken down as $300 per hour for Attorney Robin Nice's two hours of work, and $150 per hour for Law Clerk Alina Antropova's 9.5 hours of work.  Doc. No. 11-5 at 1.  Petitioner concedes that EAJA generally limits attorney's fees to $125 per hour, and her primary argument in favor of awarding "enhanced fees" is that this "litigation required highly specialized immigration habeas expertise[.]"[7]  Mot.. Doc. No. 11 at 7.  But while that justification might warrant an increased rate of $300 for Attorney Nice's work on this case, it carries less force in favor of an increased rate for Law Clerk's Antropova's time, all of which was spent researching, drafting, and otherwise preparing the instant EAJA motion.  Doc. No. 11-2 at 4.  Moreover, Petitioner does not offer any information regarding Law Clerk Antropova's experience or role (*e.g.*, paralegal, law student).

Accordingly, if the Court is inclined to award fees, the Court should apply a $100 hourly rate to Law Clerk Antropova's 9.5 hours of work, which would reduce the total fee award (exclusive of costs) to $1,550.  *See Alexander v. Mass. Dep't of Correction*, 734 F. Supp. 3d 133, 143 (D. Mass. 2024) (reducing "the hourly rates for paralegals and law students to $100 per hour" in light of "recent case law" indicating that "the hourly rate of $100 per hour is more reflective of prevailing market rates").

---

[7] *See* Nice Decl., Doc. No. 11-2, ¶ 9 (asserting that a $150 hourly rate for "law clerks" reflects "the prevailing market rate for . . . support staff with comparable experience litigating complex federal cases involving civil detention and constitutional claims").

IV.     **CONCLUSION**

For the foregoing reasons, the Court should not award fees or costs to Petitioner under

EAJA.  However, if the Court is inclined to award fees and costs, the Court should reduce any

fee award as set forth above.


Dated: April 3, 2026                                    Respectfully submitted,

                                                        LEAH B. FOLEY
                                                        United States Attorney

                                    By:     */s/ Julian N. Canzoneri*
                                            Julian N. Canzoneri
                                            Assistant U.S. Attorney
                                            U.S. Attorney's Office
                                            John Joseph Moakley U.S. Courthouse
                                            One Courthouse Way, Suite 9200
                                            Boston, Massachusetts 02210
                                            (617) 748-3170
                                            julian.canzoneri@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on April 3, 2026.

                                            */s/ Julian N. Canzoneri*
                                            Julian N. Canzoneri
                                            Assistant U.S. Attorney