**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Lograi Tuzolana<br><br>                      Petitioner,<br><br>        v.<br><br>PATRICIA HYDE, Field Office Director,<br>U.S. Immigration and Customs Enforcement,<br>Boston Field Office,<br>TODD LYONS, Acting Director,<br>U.S. Immigration and Customs Enforcement, and<br>KRISTI NOEM, Secretary of U.S.<br>Department of Homeland Security,<br><br>                      Respondents. | C. A. No. 26-10259<br><br>**REPLY TO RESPONDENTS'<br>OPPOSITION TO PETITIONER'S<br>MOTION FOR ATTORNEY'S FEES<br>UNDER THE EAJA**<br><br>Leave to file granted on April 9, 2026 |

**Reply to Respondents' Opposition to Motion for Attorney's Fees Under the EAJA**

**INTRODUCTION**

In opposing Petitioner's motion for attorneys fees under the EAJA, Respondents make two arguments: (1) habeas petitions are not "civil actions," as required for recovery under the EAJA and (2) Respondents were "substantially justified" in arguing that this Court deny Petitioner habeas relief. However, as discussed below, (1) habeas petitions regarding immigration detention are unambiguously civil actions, and thus fall under the EAJA and (2) Respondents' position was not justified because the government's position did not have a reasonable basis in law. Additionally, (3) the Court should not reduce the fee amount because the requested fees are reasonable.

**ARGUMENT**

**(1) Habeas petitions, particularly regarding immigration detention, are civil actions, and thus fall under the reach of the EAJA.**

Whether the Court may award attorneys fees against the government hinges on whether the government waived its sovereign immunity for such a suit. The EAJA is a clear waiver of sovereign immunity, but only for actions that fall within its framework. The EAJA provides for recovery of attorney's fees in "**any civil action** (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). As habeas corpus proceedings are easily encompassed by the "any civil action" umbrella as discussed below, the EAJA waives sovereign immunity for such suits.

Habeas petitions have always been understood to be civil actions. *Ex parte Tom Tong*, 108 U.S. 556, 559 (1883) ("The writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes, but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act. Proceedings to enforce civil rights are  civil proceedings,"); *Cross v. Burke*, 146 U.S. 82, 88 (1892) ("It is well settled that a proceeding in habeas corpus is a civil and not a criminal proceeding."); *Banister v. Davis*, 590 U.S. 504, 507 (2020) ("Habeas proceedings, for those new to the area, are civil in nature.").

While the government cites several cases for the proposition that "the Supreme Court has repeatedly refused to construe the statutory phrase 'civil action' as invariably encompassing

habeas proceedings," ECF 16 at 6, these cases only address **procedural** aspects of habeas corpus.

In *Harris v. Nelson*, the Supreme Court held that the Federal Civil Rules of Procedure surrounding discovery did not apply to habeas corpus actions, simply because habeas corpus is one of the explicit exceptions to the Rules, despite its civil character. *Harris v. Nelson*, 394 U.S. 286, 292-93 (1969) ("Rule 1 of the Federal Rules of Civil Procedure provides that: 'These rules govern the procedure in the United States district courts in all suits of a civil nature… with the exceptions stated in Rule 81.' At the time of the decision below Rule 81 (a)(2) provided, in relevant part, that the Rules were not applicable in habeas corpus,"). By listing habeas as an exception to the rules, the Court affirmed that habeas was a civil suit, as otherwise there would be no need for an exception. Further, the quotation cited by the government, when properly placed in context, refers only to specific procedural aspects of habeas corpus:

> But the label is gross and inexact. Essentially, the **proceeding** is unique. Habeas corpus practice in the federal courts has conformed with civil **practice** only in a general sense. There is no indication that **with respect to pretrial proceedings for the development of evidence**, habeas corpus practice had conformed to the practice at law or in equity 'to the extent' that the application of rules newly developed in 1938 to govern discovery in 'civil' cases should apply in order to avoid a divergence in practice which had theretofore been substantially uniform. *Harris*, 394 U.S. at 293-94 (emphasis added).

The quotation does not challenge the otherwise civil nature of habeas corpus actions beyond procedure. Furthermore, footnote 7, also cited by the government, again merely references procedural differences, with an emphasis on the need for more applicable rulemaking to address the specific needs in habeas corpus proceedings.[1]

---

[1] "In fact, it is our view that the rule-making machinery should be invoked to formulate rules of practice with respect to federal habeas corpus and §2255 proceedings, on a comprehensive basis and not merely one confined to discovery. The problems presented by these proceedings are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, and reliance upon usage and the opaque language of Civil Rule 81 (a)(2) is transparently inadequate. In our view the results of a meticulous formulation and

The citation to *Schlanger v. Seamans* is a footnote as well, constituting non-binding dicta. The footnote as a whole discusses whether nationwide service of process is appropriate for habeas corpus actions.[2] The quotation cited by the government ("Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions,") refers to civil rules regarding the service of process, not the underlying character of the action. *Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4 (1971).

Lastly, *Stafford v. Briggs* is about mandamus actions, not habeas corpus. Just like with *Schlanger v. Seamans*, the issue at hand was whether nationwide service of process is appropriate for that type of civil case. The quotation in context states, "This is not the first time **an overbroad interpretation of § 1391(e)** has been rejected by this Court. In *Schlanger v. Seamans*, 401 U.S. 487 (1971), the question was whether in a habeas corpus proceeding 'any custodian, or one in the chain of command, as well as the person detained, must be in the territorial jurisdiction of the District Court.' *Id.*, at 489. While recognizing that habeas corpus is 'a civil action,' we noted that reference to §1391(e) did not provide the answer… The clear purport of our statement in *Schlanger* is that Congress did not intend the phrase 'civil action' to be given the sweeping definition argued for it in that case, and that the Court was required to turn to the legislative history to determine which 'civil actions' **§1391(e)** governed. *Stafford v. Briggs*, 444 U.S. 527, 542-43 (1980) (emphasis added). This "sweeping definition" is only questioned in

adoption of special rules for federal habeas corpus and §2255 proceedings would promise much benefit." *Harris*, 394 U.S. at 300 n.7.

[2] "Although by **28 U.S.C. §1391(e)** (1964 ed., Supp. V), Congress has provided for **nationwide service of process in a 'civil action** in which each defendant is an officer or employee of the United States,' the legislative history of that section is barren of any indication that Congress extended habeas corpus jurisdiction. That section was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia. *See* H. R. Rep. No. 536, 87th Cong., 1st Sess., 1; S. Rep. No. 1992, 87th Cong., 2d Sess., 2. **Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions.**" *Schlanger*, 401 U.S. at 490 n. 4 (emphasis added).

the specific context of 28 U.S.C. §1391(e), a procedural statute regarding venue and process of service.

All of these Supreme Court cases concern questions of whether to apply certain procedural rules to habeas actions. These procedural differences do not change the general categorization of habeas corpus as a civil action: "Many civil actions—including ones expressly within the scope of the EAJA's 'civil action' provision—have unique rules of practice or procedure, like veterans' benefits actions," *Michelin v. Warden Moshannon Valley Corr. Ctr.*, Nos. 24-2990, 24-3198, 2026 U.S. App. LEXIS 3264, at *13-14 (3d Cir. Feb. 2, 2026).

The Supreme Court has **not** ruled that habeas actions are not civil actions, other than considering whether niche procedural statutes apply to them. Meanwhile, the EAJA's plain language includes **all** civil actions, regardless of whether or not they are subject to particular procedural rules. In fact, where the exact phrase, "any civil action" was at issue before, the Supreme Court held, "The reach of 'any civil action' is unmistakable. The phrase is used without qualification, without hint that some should be excluded." *Ex parte Collett*, 337 U.S. 55, 58 (1949). This precedent establishes a clear basis for interpreting the statute by reading the text plainly, and rejecting the government's construction of habeas corpus, which misconstrues the case law that distinguishes habeas corpus from other civil actions **only** on a procedural level.

At the Circuit Court level, the Fourth and Fifth Circuits have held that immigration habeas proceedings are "hybrid actions" rather than civil actions. *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021); *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). However, the Third Circuit, the most recent Circuit Court to consider the issue, resoundingly critiqued the logic underlying the "hybrid action" conceptualization as applied to immigration habeas:

> The 'hybrid' theory raises a question: A hybrid of what and what? The Government avoids saying in its brief, because the answer exposes this argument

as a dead end. To the extent habeas actions are hybrids, they are hybrids of civil actions and criminal ones… But we are not reviewing habeas petitions for release from criminal detention. We are reviewing them for release from immigration detention. In that context, every element is civil… A hybrid of a civil action and a civil action is a civil action. *Michelin*, Nos. 24-2990, 24-3198, 2026 U.S. App. LEXIS 3264, at \*12-13.

Thus, while the "hybrid" theory may impact whether EAJA encompasses habeas in a criminal context, it should not be used to reduce the EAJA's reach in immigration habeas proceedings, as no part of the proceeding is criminal in nature.

Furthermore, the Fourth and Fifth Circuits' "hybrid action" argument is the minority view, with **the Second, Third, Ninth, and Tenth Circuits all firmly establishing that immigration habeas actions are civil actions for EAJA**. *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) ("we furthermore hold that 'civil actions' under EAJA encompass immigration habeas petitions."); *Michelin*, Nos. 24-2990, 24-3198, 2026 U.S. App. LEXIS 3264, at \*28 ("we hold the EAJA unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. §2241."); *In re Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) ("the dual purposes underpinning the EAJA are served by characterizing this particular proceeding as a civil action… Application of the EAJA to Hill's petition is appropriate."); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) ("We therefore hold that, under the EAJA, habeas actions challenging immigration detention are unambiguously 'civil actions.' The EAJA authorizes the award of attorneys' fees to petitioners who prevail against the Government in such actions.").

For all of these reasons, a habeas corpus action is unambiguously within the civil action category for EAJA purposes, a determination that stems from the nature of the suits, not the minutiae of their procedure. As such, the EAJA waived sovereign immunity, allowing for present Petitioner's suit.

**(2) Respondents' position was not substantially justified because the government's position did not have a reasonable basis in law.**

To meet the substantial justification bar, Respondents must show that **both** their pre-litigation position and position during litigation were justified: "To satisfy its burden, the government must justify not only its pre-litigation conduct but also its position throughout litigation." *Dantran, Inc. v. U.S. Dep't of Labor*, 246 F.3d 36, 41 (1st Cir. 2001). Also, "[W]hen the government's unjustified prelitigation position forces a lawsuit, the petitioner may recover fees under the EAJA for the entire suit, even if the government's litigation position was reasonable." *United States v. 515 Granby*, LLC, 736 F.3d 309, 316 (4th Cir. 2013). To be substantially justified, these positions must have a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Respondents had no reasonable basis to believe that this Court would uphold Petitioner's detention without a bond hearing, prior to litigation or during litigation. As they stated in Respondents' Opposition to habeas petition, "Respondents submit that the legal issues presented in the Petition are similar to those recently addressed by this Court in *Garcia v. Hyde* and *Encarnacion v. Moniz*. Should the Court follow its reasoning in *Garcia* and *Encarnacion*, it would reach the same result here. Accordingly, Respondents submit that the Court may resolve this Petition without further briefing or oral argument." ECF 7 at 1. **By Respondents' own acknowledgment, their position was not supported by the Court's case law. And despite the adverse case law, Respondents did not advance any new argumentation for their position or distinguish Petitioner's case from these prior decisions. Instead they rested on arguments that had been unilaterally rejected on the merits in this Circuit.**

Respondents now cite *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. Feb. 6, 2026) and *Avila v. Bondi*, No. 25-3248, 2026 U.S. App. LEXIS 8744, at \*13 (8th Cir. Mar. 25, 2026) to argue that their position was substantially justified. However, in other suits for EAJA fees, based on immigration habeas petitions, **other courts have explicitly held that the government's position was not substantially justified despite the ruling in *Buenrostro***:

> The government asserts it was justified because the arguments it presented in this case were the same arguments a handful of other judges, including a divided Court of Appeals panel, have upheld. *See* filing 12 at 1-2; *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026). But the Court is not persuaded that the underlying conduct of the agency was substantially justified…The government has not provided any justification, let alone a substantial one, for its radical departure from the historical treatment of noncitizens who entered the United States without inspection. Its arguments rely purely on statutory interpretation; the government apparently expects it can transform an entire area of administrative law because it unilaterally decided that, for thirty years, everyone was wrong about what a statute meant. The Supreme Court has repeatedly rejected ahistorical and strained readings of old statutes to justify expansive executive power… So too does this Court. While the U.S. Attorneys are likely acting in good faith to defend the government's actions, the Court is not persuaded that the government was substantially justified in dramatically changing its policy so as to justify mandatory detention and deny noncitizens process due under § 1226(a).

*Salazar v. Noem*, No. 8:26-CV-44, 2026 U.S. Dist. LEXIS 42899, at \*2-4 (D. Neb. Mar. 3, 2026); *Hurtado v. Bondi*, No. 0:26-CV-546, 2026 U.S. Dist. LEXIS 54768, at \*2 (D. Minn. Mar. 17, 2026) ("But for the reasons articulated in *Salazar v. Noem*, No. 8:26-CV-44, 2026 U.S. Dist. LEXIS 42899, 2026 WL 594606 (D. Neb. Mar. 3, 2026), the Court finds the government's conduct—particularly the underlying conduct of the agencies involved—was not substantially justified."). To these Courts, the government's litigation position should not be considered in isolation; rather the **historical and legal background is extremely relevant to the question of whether their position was substantially justified**, with a reasonable basis in law.

Here too, our local legal context is most relevant when considering whether the government was substantially justified in detaining Petitioner and refusing her a bond hearing.

On this exact issue, a court in this Circuit recently found that EAJA fees for successful immigration habeas are appropriate **because the government's position, identical to what it asserts here, cannot be substantially justified when considered within the due process framework for detention established in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021)**:

> In *Hernandez-Lara*, the First Circuit held that pre-removal detention of a noncitizen who evaded inspection at the border could not be justified unless the Government persuaded an immigration judge that the noncitizen posed a danger to the community or was likely to abscond if released… Based on *Hernandez-Lara*, the preexisting law in this Circuit required Respondents to afford a noncitizen like Petitioner access to a discretionary detention regime on due process grounds. In other words, in this Circuit, Respondents' reliance on *Hurtado* has always been in tension with the teaching of *Hernandez-Lara*; it has never involved an attempt to simply take a new administrative approach to detention in a legal vacuum.
>
> Based on the *Hernandez-Lara* lodestone, I conclude that Respondents' approach to the pre-removal detention of noncitizens like Petitioner has not been substantially justified within this Circuit. Understanding that no district judge in this District agreed with their proposed statutory work around—something the Government has repeatedly acknowledged in this and similar cases—Respondents should have conformed to the requirements of *Hernandez-Lara* for this category of noncitizen, pending the outcome of appeals in its forerunner cases, and not carried on in every case as though *Hernandez-Lara*'s categorical due process requirements were effectively inconsequential to its immigration enforcement program within the First Circuit.

*Bernardo-Rodrigues v. Hyde*, No. 2:25-cv-00553-LEW, 2026 U.S. Dist. LEXIS 26816, at *8 (D. Me. Feb. 10, 2026). Here, this Court should consider whether the government's position was justified based on this Circuit's precedents, not based on non-binding cases from the Fifth and Eighth Circuits – cases that were decided *after* this Petitioner was arrested and held in mandatory detention, actions that this Court later held were unlawful.

In summary, hundreds of habeas petitions from across the country overwhelmingly agree that noncitizens living for years in the interior of the United States are not properly subject to mandatory detention under § 1225(b). *See, e.g., Maliza v. Bondi,* Civil Action No. 26-3170

(SDW), 2026 U.S. Dist. LEXIS 71159, at *3 (D.N.J. Apr. 1, 2026) ("Federal courts have similarly rejected Respondents' position in near unanimity in hundreds of cases to date."); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 U.S. Dist. LEXIS 226877, at *2 (E.D. Pa. Nov. 18, 2025) ("there are 288 district court decisions addressing this issue. In all but six, the Government's interpretation of the INA—the same interpretation it urges here—was rejected."); *Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 U.S. Dist. LEXIS 228008, at *3 (S.D.N.Y. Nov. 18, 2025) ("Indeed, by the Court's count, there are scores of decisions — in this Circuit and beyond — on the Section 1226(a) side of the split."); *Aquino v. Larose*, No. 25-cv-2904-RSH-MMP, 2025 U.S. Dist. LEXIS 222821, at *10 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years."); *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 U.S. Dist. LEXIS 205416, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).")

Respondents' pre-litigation position here was untenable on the weight of this precedent and case law from this Court, which they cited in their Response. Their position is a radical departure from the well-established treatment of noncitizens who entered the United States without inspection and the due process requirements of *Hernandez-Lara*. Furthermore, the government's stance was rejected by this Court repeatedly in the past, and again for present

Petitioner. As Respondents presented identical arguments and did not buttress their position with new reasoning during the litigation, they cannot successfully establish that their positions had a reasonable basis in law. For all of these reasons, their positions were not substantially justified for the purposes of EAJA.

**(3) The fees requested are reasonable and under the EAJA parameters.**

Undersigned counsel maintains that $150 an hour is a reasonable rate for law clerk work spent preparing this request for attorneys fees under EAJA.

First, Respondents did not challenge the reasonableness of Attorney Nice's requested hourly rate of $300, but did contest the hourly rate of $150 for work performed by Law Clerk Alina Antropova. Having not critiqued the attorney rate adjusted for inflation, it follows that, at minimum, the law clerk rate should also be adjusted for inflation. According to declarations of immigration attorneys in the Boston area, the prevailing rate for law clerks is about $150 an hour, commensurate with the rising costs of legal representation in Boston. *See* Ex. 6, Declaration Regarding Market Rate for Law Clerks. Here, the requested rate is the same as the prevailing rate, $150 an hour.

Though the government cites *Alexander v. Mass. Dep't of Correction*, 734 F. Supp. 3d 133, 143 (D. Mass. 2024) as the basis for an $100 per hour rate, that calculation is an ill fit in several ways. (1) The case addresses an entirely different statutory scheme for recovering attorneys fees: 42 U.S.C. § 12205, which is part of the Americans with Disabilities Act, rather than the EAJA, and does not necessarily have the same parameters for calculating fees. (2) The legal work in that suit was not immigration-related, making it an entirely different legal field, with different prevailing market rates. Therefore, it should not be used as a direct correlation for the present fee calculation. (3) The legal work in that case was performed from 2020 to 2023.

*Alexander v. Mass. Dep't of Corr.*, 734 F. Supp. 3d 133, 138 (D. Mass. 2024). It would be reasonable for this Court to recognize that the prevailing rate for legal work has substantially increased over the past three to five years, particularly in the immigration context as the need for immigration legal services for detained clients has skyrocketed. For all of these reasons, it is more appropriate to set an hourly rate for immigration law clerk work based on the prevailing market rate for the immigration legal field, in the year in which the legal work was performed (*see* Ex. 6, Declaration Regarding Market Rate for Law Clerks), rather than look to the sole case the government cites to warrant a fee reduction.

Additionally, the 9.5 hours of law clerk time "spent researching, drafting, and otherwise preparing the instant EAJA motion," ECF 16 at 14, are reasonable. This Motion to recover EAJA fees, and now this Reply, required crafting novel arguments regarding the characterization of habeas petitions as civil actions and whether the government's litigation positions were substantially justified considering the government's radical interpretations of § 1225(b) and § 1226(a). Habeas petitions in the immigration context, specifically regarding issues of mandatory versus discretionary detention for noncitizens who entered without inspection, have only become widespread since the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, published September 5, 2025. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The immigration bar as a whole is learning, in real time, the best practices and legal arguments required to first prevail on the underlying habeas petition, and then subsequently recover attorneys fees under the EAJA.

This request of EAJA fees, ECF 11, is the first of its kind filed by undersigned counsel's firm, McHaffey & Nice, LLC. *See* Ex. 7, Declaration of Law Clerk Alina Antropova. Similarly, local immigration firms have also been encountering EAJA for the first time in recent weeks. Ex.

6, Declaration Regarding Market Rate for Law Clerks. Accordingly, filing an EAJA motion required an extensive amount of research to understand both the EAJA landscape in general, and the specific arguments that should be made for an EAJA fee request particularized to immigration habeas petitions in this context.

Law Clerk Alina Antropova has the appropriate experience to conduct this research and drafting in an efficient manner. *See* Ex. 7, Declaration of Law Clerk Alina Antropova. Absent her efforts, this legal work would have been performed by an attorney, which would have ultimately increased the amount of fees respectfully requested by undersigned counsel.

## CONCLUSION

For the foregoing reasons, Petitioner has met all of the statutory requirements to recover attorney's fees under the EAJA. The plain language of the EAJA, its treatment in the case law, and the majority of Circuit Courts confirm that immigration habeas petitions are "civil actions" for which sovereign immunity is waived. Additionally, Respondents' positions were not substantially justified: the government cannot claim a reasonable basis in law when its primary arguments have been repeatedly and soundly rejected by this Court, Respondents did not make any novel arguments for the basis of Petitioner's classification under mandatory detention, and their position has always been in tension with First Circuit precedent in *Hernandez-Lara v. Lyons*. Furthermore, Petitioner's requested rate for Law Clerk Alina Antropova's work is reasonable based on prevailing rates in the Boston area and her qualifications.

Accordingly, Petitioner respectfully requests that the Court grant her motion for attorney's fees and expenses in the amount of $3,830. This updated total represents the additional time spent researching and drafting this Reply. Ex. 8 provides an Itemized Time Recording Sheet and an Updated Statement of Total Fees and Costs for this legal work.

Respectfully Submitted,

April 17, 2026                    PETITIONER LOGRAI TUZOLANA,

By her Attorney,

_____

Robin N. Nice

McHaffey & Nice, LLC
Beacon Street, Suite 720
Boston, MA  02108
617-702-8921 (phone)

## <u>INDEX OF EXHIBITS</u>

| Exhibit No. | Document: |
|:---:|---|
| 6 | Declaration Regarding Market Rate for Law Clerks |
| 7 | Declaration of Law Clerk Alina Antropova |
| 8 | Additional Time Reporting and Updated Statement of Total Amount of Fees and Costs |

## **CERTIFICATE OF SERVICE**

I, Robin Nice, Counsel for Petitioner, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

April 17, 2026                                                  Robin N. Nice

McHaffey & Nice, LLC
6 Beacon Street, Suite 720
Boston, MA  02108
617-702-8921 (phone)